IES UTILITIES INC., Midwest Power Systems, Inc., Iowa–Illinois Gas and Electric Company, and Interstate Power Company, Appellants,

v.

IOWA DEPARTMENT OF REVENUE AND FINANCE, Appellee.

No. 94–1987.

Supreme Court of Iowa.

March 20, 1996.

Rehearing Denied April 17, 1996.

Linda S. Weindruch and Rebecca Boyd Parrott of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, Harry M. Griger, Special Assistant Attorney General, and James D. Miller, Assistant Attorney General, for appellee.

McGIVERIN, Chief Justice.

The controlling issue here is whether the district court correctly sustained defendant Iowa Department of Revenue's (DOR) motion to dismiss plaintiff utilities' petition for declaratory judgment in this agency action case for failing to exhaust all adequate administrative remedies. Due to lack of district court jurisdiction over the original action filed by the utilities, we affirm.

I. *Background facts and proceedings.* Plaintiff utilities brought an original petition in district court for declaratory judgment under Iowa rule of civil procedure 261 and a motion for a temporary injunction against defendant DOR. The petition for declaratory judgment alleged, in substance, that the DOR in an agency action failed to follow statutory rulemaking procedures concerning implementation of certain accounting meth-

odologies employed by DOR for valuing plaintiffs' property throughout the state. *See* Iowa Code § 17A.4(1), (3) (1995). Utilities requested, in part, that the district court enjoin DOR from using the challenged accounting methodologies when valuing their property for tax purposes. Plaintiffs alleged they had not exhausted their administrative remedies at the DOR or agency level.

In their petition, plaintiffs attempted to establish jurisdiction of the district court for this original action on two grounds: (1) our holding in *Lundy v. Iowa Department of Human Services*, 376 N.W.2d 893, 894 (Iowa 1985), and (2) the potential of *economic harm* to themselves in the event they are required to pay property taxes assessed under the challenged accounting methodologies. *See Salsbury Lab. v. Iowa Dep't of Envtl. Quality*, 276 N.W.2d 830, 837 (Iowa 1979).

DOR filed a motion to dismiss the plaintiff utilities' petition for declaratory judgment alleging lack of district court subject matter jurisdiction over the case. *See* Iowa R.Civ.P. 104(a). In its motion, DOR argued the court had no jurisdiction to rule on the merits of the petition because the utilities, concerning an agency action, failed to exhaust all adequate administrative remedies available under chapters 17A and 429 of the Iowa Code before bringing a petition in district court. Even though DOR's motion to dismiss phrased its argument in terms of lack of "subject matter jurisdiction," the present case concerns whether the district court has "jurisdiction" or "authority" to entertain plaintiff utilities' declaratory judgment action based on the *particular procedural status of the case*, not whether the court has subject matter jurisdiction to entertain declaratory judgment actions in general. *See City of Des Moines v. Des Moines Police Bargaining Unit Ass'n*, 360 N.W.2d 729, 730 (Iowa 1985); *cf. Linn County Sheriff v. Iowa Dist. Ct.*, 545 N.W.2d 296, 298 (Iowa 1996) (in certiorari action challenging district court action, court had "jurisdiction of the case" when it entered orders granting inmate work release privileges outside the county); *Anderson v. W. Hodgeman & Sons, Inc.*, 524 N.W.2d 418, 420–21, 421 n. 2 (Iowa 1994) (in judicial review of industrial commissioner decision,

compliance with statutory prerequisites is required to establish district court "jurisdiction" over the particular matter); *Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989) (in appeal of district court dismissal for want of subject matter jurisdiction over two age discrimination lawsuits, court lacked "authority" in the particular situation to resolve the disputes).

The district court dismissed plaintiffs' petition for declaratory judgment and motion for a temporary injunction because, among other reasons, utilities failed to exhaust all adequate administrative remedies prior to proceeding to district court. Utilities appeal from this ruling.

■ II. *Standard and scope of review.* Our review is for correction of errors at law. Iowa R.App.P. 4. Because we are reviewing a district court ruling sustaining a motion to dismiss, we view plaintiff utilities' allegations in their petition for declaratory judgment in a light most favorable to them, resolve doubts in their favor, and will uphold the ruling only if the utilities cannot establish jurisdiction under any state of facts provable under the allegations in the petition. *See Lundy*, 376 N.W.2d at 894.

Accordingly, the proper record for our review is limited to the averments contained within plaintiff utilities' petition for declaratory judgment and judgments therefrom. *See Salsbury*, 276 N.W.2d at 833.

■ III. *The Iowa administrative procedure act and the exhaustion requirement.* The carefully crafted framework of Iowa Code chapter 17A, the Iowa Administrative Procedure Act (APA), requires litigants affected by the actions of state agencies to follow the rules as a prerequisite to obtaining *proper* access to the district court for judicial review. This voyage has been time and time again referred to as the "exhaustion" requirement set forth in section 17A.19(1). Exhaustion has several purposes, including honoring agency expertise, handling matters within an agency and not in the courts, and preserving precious judicial resources. *See Pro Farmer Grain, Inc. v. Iowa Dep't of Agric. & Land Stewardship*, 427 N.W.2d 466, 469 (Iowa 1988). The very purpose of an

administrative agency, such as DOR, is to expertly perform various functions in a general area of the law for the benefit of the general public (the taxpayers that fund the operation of all administrative agencies). *See City of Des Moines,* 360 N.W.2d at 730–32 (emphasizing the benefits of resolving specialized disputes first at the agency level, as opposed to in district court); *see also Iowa Dep't of Transp. v. Iowa Dist. Ct.,* 534 N.W.2d 457, 459 (Iowa 1995).

■■■■ The APA generally allows, as an exclusive form of relief, judicial review from an agency action to district court whether the action is rulemaking, a contested case, or "other agency action." *See Polk County v. Iowa State Appeal Bd.,* 330 N.W.2d 267, 276 (Iowa 1983). Exhaustion of adequate administrative remedies is generally required prior to permitting a party to seek relief via judicial review in district court. *See* Iowa Code § 17A.19(1); *City of Des Moines,* 360 N.W.2d at 731. Normally, the district court sits as an *appellate* court in judicial review of a final agency action. The doctrine of exhaustion is not absolute, however. In the following limited situations, we have allowed a litigant to bypass the exhaustion requirement:

(1) plaintiff challenges, by way of *judicial review under Iowa Code section 17A.19,* an agency action as in violation of the rulemaking procedures set forth under the APA, *see Lundy,* 376 N.W.2d at 894;

(2) plaintiff claims an adequate administrative remedy does not exist for the claimed wrong, *see Rowen v. LeMars Mut. Ins. Co.,* 230 N.W.2d 905, 909 (Iowa 1975), or stated otherwise, plaintiff will suffer "irreparable injury of substantial dimension" if not allowed access to district court prior to exhausting all administrative remedies, *see Salsbury Lab.,* 276 N.W.2d at 837; or

(3) plaintiff claims the applicable statute does not expressly or implicitly require that all adequate administrative remedies be exhausted prior to bringing an action in district court, *see Rowen,* 230 N.W.2d at 909.

Plaintiffs pled and readily admit they have not exhausted their administrative remedies prior to filing their petition for declaratory judgment in district court. *See* Iowa R.Civ.P. 261. Plaintiffs rely mainly on *Lundy,* cited in (1) above, to avoid having to exhaust all adequate administrative remedies that plaintiffs admit exist in this case, such as taxpayer remedies under Iowa Code chapter 429 and administrative remedies under Iowa Code section 17A.19. Plaintiffs here do not rely on the exception cited in (3).

IV. *Application of the Lundy and Salsbury exhaustion exceptions to the facts of the present case.* The plaintiff utilities must satisfy either the *Lundy* or *Salsbury* exceptions to the exhaustion requirement in order for the district court to have jurisdiction over their petition for declaratory judgment and to avoid going through the normal chapter 17A and judicial review of final agency action steps. We conclude they have not met this burden.

The present action was commenced when plaintiff utilities filed a petition for declaratory judgment in district court pursuant to rule of civil procedure 261. This was an original action. Plaintiffs did not first exhaust taxpayer remedies available under Iowa Code chapter 429 and, within that chapter, did not file a petition for judicial review pursuant to the APA. *See* Iowa Code §§ 17A.19, 429.3.

Plaintiffs' petition states that certain accounting methodologies were used by DOR in determining valuations of plaintiffs' property without previously following rulemaking procedures set out in Iowa Code section 17A.4. Thus, plaintiffs contend that valuations and tentative tax assessments imposed by DOR on plaintiffs' property using these methodologies were invalid.

In their petition, plaintiff utilities alleged they had received 1994 tentative assessment notices from DOR. Plaintiffs' next procedural steps within the agency would be to request informal conferences with DOR, *see* Iowa Admin.Code r. 701–7.11 (1995), receive their final assessments, *see* Iowa Code §§ 428.29, 429.1, and then appeal the final assessments to the state board of tax review. *See id.* § 429.2. At all agency levels, plaintiffs could urge the invalidity of the assessments and any valuation methodologies

inhering therein including challenges to allegedly improper rulemaking by DOR.

In the event of an adverse ruling from the state tax board at the final level, plaintiffs could then seek judicial review in the normal process in district court. *See id.* §§ 429.3, 17A.19. At that time, judicial resources would be tapped for the first time and the appeal from *a final agency action* would proceed in an orderly fashion as provided and envisioned by the APA.

This procedural framework set forth in Iowa Code chapters 428 and 429 and the APA was raised in defendant DOR's motion to dismiss raising the above statutory steps, stating plaintiffs failed to exhaust all adequate administrative remedies, prior to requesting judicial relief, as required by chapter 429 and section 17A.19(1). As before stated, plaintiffs' petition itself affirmatively alleged plaintiffs had not exhausted their administrative remedies prior to filing the petition for declaratory judgment in district court.

■ 1. *No petition for judicial review filed in order to avoid exhaustion requirement.* Plaintiff utilities first attempt to establish district court jurisdiction over their petition for declaratory judgment by relying on *Lundy v. Iowa Department of Human Services,* 376 N.W.2d 893 (Iowa 1985), as grounds for seeking relief from alleged improper rulemaking procedures without first exhausting all adequate administrative remedies. Such reliance is in error.

The *Lundy* decision allows an aggrieved party to initiate a *judicial review* proceeding in district court pursuant to Iowa Code section 17A.19 to challenge alleged procedural

irregularities in agency rulemaking in violation of section 17A.4(3) prior to exhausting all adequate administrative remedies. *Id.* at 896; *see Hollinrake v. Monroe County,* 433 N.W.2d 696, 699 (Iowa 1988). In *Lundy,* the petitioner did just that. He filed a *judicial review petition* under chapter 17A and not a rule of civil procedure 261 declaratory judgment petition as plaintiffs did in the present case.

We have stated that

> when a party seeks a declaratory judgment on a matter "entrusted exclusively in the first instance to an administrative agency," the court must refuse to issue a ruling unless the action "is indistinguishable in substance from a petition for judicial review and all of the jurisdictional prerequisites for judicial review of agency action" have been met. Declaratory relief is not appropriate "when there is a complete remedy otherwise provided by law that is intended to be exclusive."

*Iowa Dep't of Transp.,* 534 N.W.2d at 459 (quoting *City of Des Moines,* 360 N.W.2d at 730–31).

The petition filed by plaintiff utilities was not in substance a petition for judicial review. Unlike the petition in *Lundy,* plaintiffs here never alleged their substantial rights were affected by any agency violations of the standards set forth in Iowa Code section 17A.19(8).[1] We agree with the district court's summary of the procedural errors attributable to plaintiff utilities in this case:

> The original action filed in the instant matter is not the equivalent to and does not constitute a petition for judicial review contemplated in [Iowa Code] section

---

1. The following is an excerpt from the *Lundy* case petition for judicial review showing the petition was filed pursuant to section 17A.19, not pursuant to rule of civil procedure 261. The petition alleged:

> There is no adequate administrative remedy available to Petitioners in light of the Respondent's actions in adopting a rule without complying with the Administrative Procedures Act. The judicial review provisions of Chapter 17A.19, Code of Iowa, provide [an] appropriate means for reviewing the procedural rulemaking errors of administrative agencies which cannot be corrected by the administrative process after the procedural infraction.

> The Respondent Agency has prejudiced substantial rights of Petitioners insofar as its actions as set forth in this Petition:
>
> (a) violate statutory provisions of Iowa law;
> (b) exceed the statutory authority of the agency;
> (c) establish rules upon unlawful procedures;
> (d) constitute unreasonable, arbitrary and capricious procedures impermissible under Iowa law.

*See* Iowa Code § 17A.19(8)(a), (b), (d), (g).

17A.19(2), nor did [plaintiffs] intend as much. Section 17A.19 is the exclusive means in which to seek judicial review of agency action.

The instant case . . . does not constitute a labeling issue. Instead, this is a case where the plaintiff [utilities] did not intend to bring a judicial review of agency action [as was the case in *Lundy* ], but rather a new, original action [as in *Salsbury* ] with additional plaintiffs in an attempt to have this court exercise original, and not appellate, jurisdiction.

(Citations omitted.)

The *Lundy* case shows the present plaintiffs, for reasons best known to them, chose to follow the wrong procedural avenue to seek original relief by a declaratory judgment action through the court system before exhausting all adequate administrative remedies at the agency level. Plaintiffs did not follow *Lundy* by filing a *petition for judicial or appellate review* in district court and, therefore, cannot properly rely on that case to establish district court jurisdiction over their present declaratory judgment petition.

■ 2. *Economic harm not sufficient to avoid exhaustion requirement.* Second, plaintiff utilities contend the district court has jurisdiction to enter judgment on their petition for declaratory judgment because they alleged they will suffer "economic harm" if access to the court is denied prior to exhausting all administrative remedies. We have stated "a litigant who would suffer irreparable harm from administrative litigation delay may proceed to [district] court without exhausting administrative remedies." *See Salsbury,* 276 N.W.2d at 837.

The plaintiff in *Salsbury,* who sought to challenge the constitutionality of a statute in district court, failed to show irreparable injury of substantial dimension and, therefore, we concluded its petition for declaratory judgment was premature. *Id.* at 837–38. We stated monetary losses were insufficient under most circumstances to be considered irreparable injury. *Id.* at 837; *see Riley v. Boxa,* 542 N.W.2d 519, 522 (Iowa 1996) (in zoning case, neither an administrative fee nor loss of rental income were sufficient to be considered irreparable injury justifying judi-cial intervention prior to exhaustion of administrative remedies). We concluded the plaintiff in *Salsbury* should have taken the judicial review path as required by applicable statutes.

Like the plaintiffs in *Salsbury* and *Riley,* plaintiff utilities would not suffer irreparable injury should they be required to exhaust their administrative remedies by appealing the alleged improper rulemaking actions of DOR and their tax assessments to the state board of tax review and from there, if necessary, take judicial review under Iowa Code section 429.3 and chapter 17A to district court.

The district court was correct to reject plaintiffs' unsupported contention that the state tax board would fail to provide an adequate or timely administrative hearing and remedy on this matter. Also, as observed by the district court, plaintiffs have sufficient recourse to obtain any refund of taxes erroneously paid if they are ultimately successful in pursuing their claim. *See* Iowa Code § 445.60.

3. *The injunction request.* As a final matter, we conclude plaintiffs' motion for temporary injunction against DOR from issuing final tax assessments based on the questioned valuations was properly dismissed by the district court. The request for injunction was dependent on plaintiffs' petition for declaratory judgment, which we have concluded was improperly brought.

V. *Disposition.* For reasons best known to plaintiffs, they failed to seek judicial review from the DOR's actions prior to seeking declaratory relief in the district court. The plaintiffs' procedural failures prohibit us from considering any other issues briefed by the parties.

Accordingly, we conclude the district court properly dismissed plaintiffs' petition for declaratory judgment and motion for temporary injunction in this agency action case for failure to exhaust all adequate administrative remedies at the agency level.

**AFFIRMED.**

All justices concur, except CARTER, J., who concurs and specially concurs, and HARRIS, J., joined by NEUMAN and SNELL, JJ., who dissent.

ANDREASEN and TERNUS, JJ., take no part.

CARTER, Justice (concurring specially).

I fully agree with the opinion of the court and join therein. That opinion correctly notes that *Lundy v. Iowa Department of Human Services,* 376 N.W.2d 893 (Iowa 1985), was sufficiently different from the present facts as to provide no basis for appellants to reasonably believe that they could ignore the available administrative remedies and proceed directly to district court.

I write separately because I believe that *Lundy* was incorrectly decided and that the exhaustion rule should, in the future, be applied to facts such as were present in that case. In *Jew v. University of Iowa,* 398 N.W.2d 861 (Iowa 1987), we considered the exhaustion rule and stated:

> Where a contested case procedure envisioned by section 17A.12 has been undertaken and has run its course to conclusion, it is almost axiomatic that any further challenge to the action taken or confirmed by the final agency decision may only be asserted by proper petition for judicial review under section 17A.19. With regard to rule-making activities, however, the situation is not so rigid. Statutory procedures exist for challenging agency rules by judicial review of the final agency action adopting the rule, but this method of challenge is not exclusive. A party aggrieved by application of an administrative rule may challenge its validity in an independent action where the rule is sought to be applied. *Cf. Lundy v. Iowa Department of Human Services,* 376 N.W.2d 893, 895 (Iowa 1985).

*Id.* at 864 (citation omitted). I find that the statements made in *Jew* concerning the extent to which the exhaustion requirement applies to a challenge of an administrative rule were correct. However, the citation of the *Lundy* decision in support of those statements, even as a "*cf.*" citation, was unwise and tends to send mixed signals. What *Jew*

decided was that exhaustion is not required at the rule-making stage. It may await the time when the rule is sought to be applied to the adversely affected party. If that application first occurs in an administrative proceeding, as was the situation in the present case, then all available administrative remedies for lodging a challenge to the rule must be exhausted. Only if the rule is sought to be applied to the adversely affected party in an original judicial proceeding may the rule be challenged in that forum without regard to the administrative process. As the opinion of the court notes, that was not the situation in the present case. Because it was also not the case in *Lundy,* that decision should be overruled.

HARRIS, Justice (dissenting).

I respectfully dissent because I am convinced this direct court challenge was expressly authorized by our holding in *Lundy v. Department of Human Services,* 376 N.W.2d 893 (Iowa 1985). I understand *Lundy*'s clear holding to be that an administrative remedy need not be exhausted before challenging agency *rulemaking* in district court. *Id.* at 895–96. From the way the exhaustion issue was joined in district court, and in the appellate briefs, it is obvious that the parties understood *Lundy* the way I do. The parties fought the exhaustion battle solely by contesting whether the challenged actions of the agency amounted to rulemaking. Plaintiffs utilities contend the agency was involved in rulemaking; the defendant agency contends rulemaking was not involved. Both sides assume, I think correctly, that direct review is appropriate if the utilities are correct in assessing the challenged agency action as rulemaking. Not until the majority seized on it, did anyone connected with this litigation suggest that *Lundy* did not hold what it says it does.

I. Examination of the *Lundy* appendix shows that the petition in that case, though labeled one for "judicial review," actually sought only injunctive, declaratory, and general equitable relief. We were correct in ignoring any variance between the label employed and the relief sought. Under notice pleading we look beyond the form of the petition to the substance. *See Tigges v. City*

*of Ames,* 356 N.W.2d 503, 507 (Iowa 1984); Iowa R.Civ.P. 69. Lundy's petition can logically be characterized only as one for declaratory relief under Iowa rule of civil procedure 261.

The correctness of this characterization can be demonstrated in two ways. The first involves special facts in *Lundy* that are of particular interest here. At the time he filed his petition, Lundy was also the subject of a pending contested case before the agency in which the validity of the same agency rules was also challenged. We mentioned this in our opinion, stating that it had no effect on our determination. 376 N.W.2d at 895–96. Thus, other than the agency's action of promulgating the rule itself, there was no other final agency action for us to review; Lundy remained involved in a contested case still pending before the agency. In this regard we indeed noted the challenged rules constituted final agency action in and of themselves. *Id.* at 894.

Second, our analysis in *Lundy* contemplated a direct attack in district court. We framed the question as "whether [a rulemaking challenge under Iowa Code section 17A.4(3) ] must be brought before the agency or whether it may be brought in district court as in the present case." *Lundy,* 376 N.W.2d at 895. Thus the action was a direct challenge to agency rulemaking under section 17A.4(3) (rules are invalid unless adopted in substantial compliance with procedural requirements), not an ordinary petition for judicial review of agency action under section 17A.19.

Furthermore the department of human services contended Lundy was required to exhaust either (1) his right to a contested case proceeding, (2) his right to petition for the adoption of rules, or (3) his right to petition for a declaratory ruling before bringing a rulemaking challenge to district court. *Id.* We however rejected all three of the department's contentions and held "the purposes of section 17A.4(3) are furthered by permitting the challenge *to be commenced* by a judicial review [of agency rulemaking] petition in district court." *Id.* at 895–96 (emphasis added) (finding no basis for holding that an *administrative remedy be exhausted be-* *fore a judicial review proceeding can be initiated in district court* to challenge agency rulemaking). Beyond these three administrative remedies, Lundy's only other recourse was to file a petition in district court. In other words, Lundy was not required to exhaust *any* available administrative remedy before bringing his district court rulemaking challenge pursuant to Iowa Code section 17A.4(3) and as authorized by Iowa rule of civil procedure 261 (declaratory judgment).

So the utilities in the present case were justified in relying on our *Lundy* opinion when they chose a course of action and drafted their petition. It should not be held against them that they refused to mislabel their petition as one for "judicial review."

II. The majority takes the view that *Lundy* involved a petition *for judicial review under Iowa Code section 17A.19* of alleged violations of the rulemaking procedures set forth in Iowa Code section 17A.4. It is true that plaintiff's counsel (and our court) styled the petition as one for "judicial review." *See Lundy,* 376 N.W.2d at 894 (stating Lundy "filed a petition for judicial review").

In the broad sense, "judicial review" refers to the "power of courts to review [any] decision[ ] of another department or a level of government." Black's Law Dictionary 849 (6th ed. 1990). Judicial review under the Iowa administrative procedure Act (IAPA) refers to the right granted by Iowa Code section 17A.19 to "a person or party who is aggrieved or adversely affected by [the action of an administrative agency to] seek judicial review of such agency action." Also section 17A.19(1) states agency action must be final (exhaustion of remedies) before a party is entitled to judicial review. It is apparent that the label "judicial review" in *Lundy* was used in its broad sense, not in its narrow one.

III. There might seem to be superficial merit in demanding the identical exhaustion route for rulemaking challenges that is required before challenging other agency decisions. But the *majority holding, requiring* administrative exhaustion even in rulemaking challenges, has the advantage only of rigid consistency. A *Lundy* exemption makes

practical sense, and fits well among the traditional circumstances in which exhaustion may not be required before mounting a court challenge. 2 Am.Jur.2d *Administrative Law* § 511 (1994). Three of these traditional exceptions are clearly implicated here. A direct challenge is appropriate where (1) an agency requires a party to follow an unauthorized procedure; or (2) the purpose of the exhaustion requirement would not be served by enforcing the requirement under the special circumstances; or (3) exhaustion would be futile. *Id.*

The first of the three is the one most clearly implicated. It is the essence of the utilities' claim that they are being forced to submit to a procedure that was adopted by rule in a manner contrary to statute. The second exception is implicated because an exhaustion requirement here is out of plumb with the reasons generally underlying the exhaustion requirement. Judicial economy would not be served—nor would the resources of the agency be wisely expended—by tolerating enforcement of an invalid rule against these plaintiffs and all others who might be affected—until an "exhausted" challenge finally reaches us. Policy considerations also support the right to challenge unauthorized rules that might otherwise become permanent by reason of being ignored. If a controversy happens to be resolved at the agency level on some alternative ground, and if no other party challenged the rulemaking procedure within two years, the rule would become impervious to challenge. Iowa Code § 17A.4(3). The upshot would be at odds with the legislative policy of requiring agencies to comply with formal rulemaking procedures. The third exception is implicated because the utilities are challenging, not some administrative decision involving third parties, but one directed at an action of the agency itself. It is obvious that the views of these parties concerning that action was well known to the agency and yet it remained unmoved.

Even if the majority's interpretation is thought somewhat better than that announced in *Lundy*, it is not sufficiently superior to justify a new interpretation suggested by neither party. It was therefore appropriate here to raise the court challenge if, but only if, the challenged agency directive amounted to rulemaking.

IV. Because of its holding, the majority quite properly did not decide whether the agency's actions amounted to rulemaking. Under my analysis, however, it is necessary to state that I believe the agency was involved in rulemaking. In order to explain why, I must expand upon the majority's statement of the facts. The utilities' property tax valuations are determined annually by the Iowa department of revenue and finance. *See* Iowa Code §§ 428.24, 428.29 (1993). The department also certifies these annual assessments to each of the taxing districts where the utilities own property. Iowa Code § 428.29. To implement this process the department promulgated Iowa Administrative Code rule 701–77, which specifies the department's system for setting the utilities' property tax valuations.

Rule 701–77 employs three formulas for determining the unit value of a utility's operating property: (1) the stock-and-debt approach (r. 77.4); (2) the income-capitalization approach (r. 77.5); and (3) the cost approach (r. 77.6). After applying these formulas the department issues tentative notices to the utilities indicating a preliminary valuation determination. The notice, attached statements, and ensuing appeal rights are explained in the majority opinion. *See* Iowa Code § 428.29; Iowa Code ch. 429.

Because utility rates are governed by the federal energy regulatory commission, the Iowa utilities board, and other state regulatory commissions, the utilities are required to follow generally accepted accounting principles (GAAP) when compiling financial accounting and reporting statements. GAAP rules are issued by the financial accounting standards board (FASB), a private, independent organization involved in the self-policing of accountants. The utilities' financial statements are audited and thus heavily relied upon by the department when it makes the valuations.

As with any regulatory board, the FASB's rules are subject to change. At issue in the present case is the effect of three new financial accounting standards recently adopted

by the FASB. FAS 87 requires companies to use a standardized accrual method for measuring pension expenses for accounting purposes. This financial accounting method attributes pension benefits to the period the benefits are earned by the employees by mandating utilization of certain actuarial assumptions applied on a consistent basis. FAS 106 requires that a liability to pay post-retirement benefits be computed under standard actuarial assumptions for all reporting companies. In order to comply with FAS 106, the utilities record an offsetting asset and liability on their balance sheets in order to reflect the difference between financial reporting requirements and regulatory reporting requirements. FAS 109 requires all entities to make significant changes in the manner in which they reflect deferred income taxes on their financial statements. Under this rule the utilities are permitted to include deferred taxes on their financial statements only to the extent permitted by their regulators. These standards became mandatory for the 1994 tax year, although FAS 87 and FAS 96 (the predecessor to FAS 109) were optional in prior years.[1]

Uncertainty existed among the utilities, and apparently within the department itself, as to whether these new entries would be included within the current valuation methodology. On May 3, 1994, after considering presentations made by the utilities and discussions with other parties, the department issued a letter informing the utilities no "adjustments to balance sheet accounts ... for FAS 106 and FAS 109" need be made. In other words the department had decided to use these entries in making valuation assessments. The department specifically listed several reasons for this decision in its directive.[2]

On August 19, 1994, IES, acting independently, filed a petition for a declaratory ruling from the department. IES raised several arguments, the most important here being that the department's consideration of FAS 87, FAS 106, and FAS 109 constituted an amendment of existing Iowa Administrative Code rule 701–77 and was therefore said to be void for noncompliance with Iowa Code section 17A.4 rule-making procedures.[3] On October 3, 1994, the department issued a ruling rejecting this argument. It concluded that current rules permit inclusion of FAS

1. Apparently IES, and possibly other utilities, included FAS 87 in their financial statements as early as 1987. A dispute exists, however, regarding whether the department included FAS 87 entries in valuation determinations prior to the 1994 tax year. This dispute does not affect the present analysis, but could well affect the disposition if remanded. (A rule is conclusively presumed to have been made in compliance with all procedural requirements if it has not been invalidated within two years after the date it became effective. Iowa Code § 17A.4(3).)

2. The decision was predicated on the following reasons:
   (1) If the department were to reverse the entries for FAS 106 and 109, the department should reverse entries for all accounting standard changes (past, present and future).
   (2) The department would not have audited financial statements and it would be necessary to do an audit on each company before a valuation could be determined.
   (3) The department had information for two companies concerning the financial statements of FAS 106 and 109. The department reversed these impacts and processed the numbers through the valuation formula. The difference in the final valuation of these two companies was negligible. One company decreased $2 million while the other company actually increased by

$7 million. (Note: the utilities companies' assessed values are normally in the billions-of-dollars range.)
   (4) In 1993, the department ceased including accumulated deferred income taxes in the stock-and-debt approach. This fact and the removal of nonoperating property from the stock-and-debt approach results in valuations that are very similar.
   (5) The department has questioned various other states concerning this issue. No states are adjusting balance sheets for the accounting standard changes of FAS 106 or FAS 109. A State of California letter should be taken in context. California uses only the cost approach because of a master settlement agreement and FAS 106 and 109 do not affect the cost approach.

3. IES made two other arguments. First, it argued that the administrative code rules on their face and as applied by the department director are arbitrary and capricious. In support of this contention, it was noted that no other state uses the methodologies adopted in Iowa Administrative Code rule 701–77. Second, IES argued that the entries required by FAS 87, FAS 106, and FAS 109 do not represent actual liabilities and therefore should not be included in the department's stock-and-debt approach to unit valuation.

87, FAS 106, and FAS 109 in the stock-and-debt approach (r. 77.4(6)) and FAS 109 in the income approach (r. 77.5(1)).

IES did not expressly seek judicial review of the director's ruling. Instead, on November 2, 1994, IES, joined by the other utilities, filed a petition for declaratory judgment in district court, raising essentially the same claims contested in the department's declaratory ruling. The utilities also requested a temporary injunction to prevent the department from issuing assessments that included the new entries in the valuation.

The district court denied the utilities' request for a temporary injunction and dismissed the petition for declaratory judgment. Although the utilities characterized their action as an attack on the department's failure to follow proper rulemaking procedures, the court viewed the petition as questioning the department's interpretation and application of existing rules in arriving at fair-market evaluations. It thus found that Iowa Code chapter 429 provides an adequate administrative remedy by permitting the utilities to contest their assessments before the state board of tax review.

The court next examined the effect of IES's declaratory ruling petition and held the present action was not the equivalent of a petition for judicial review. The declaratory ruling was thought to constitute final agency action, and, because IES did not seek judicial review within the requisite thirty days of issuance, the court held it was deprived of subject matter jurisdiction. With regard to the remaining utilities, the court held they had failed to exhaust their administrative remedies and dismissed the petition. The utilities appeal from this ruling.

An administrative agency is a governmental body charged with administering and implementing particular legislation. *Black's Law Dictionary* 45 (6th ed. 1990). In performing this function, an administrative agency has discretion to develop policy by rule, contested cases, or both. *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002 (1947); *Young Plumbing & Heating Co. v. Iowa Natural Resources Council*, 276 N.W.2d 377, 382 (Iowa 1979). Broadly speaking, the contested case approach makes public policy by way of precedent on a case-by-case basis in the course of formal or informal adjudications in the same way a court functions when it creates the common law. In contrast the rulemaking approach makes policy by prescriptive statements of general applicability, the way a legislature operates when it enacts statutes. Although policy making discretion rests with the agency, it must scrupulously follow any procedures required by the chosen approach. Arthur Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, the Rulemaking Process*, 60 Iowa L.Rev. 731, 925 (1975). Thus "an agency may not issue a rule without following the required rulemaking procedures and may not create a binding case precedent where an evidentiary hearing is required by constitution or statute without following required contested case procedures." *Id.*

It is not always easy to determine whether an agency action constitutes rulemaking or case-by-case adjudication. One court developed the following criteria to assist in that determination:

(1) [The agency determination must be considered rulemaking when it] is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group;

(2) is intended to be applied generally and uniformly to all similarly situated persons;

(3) is designed to operate only in future cases, that is, prospectively;

(4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization;

(5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication, or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and

(6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.

*Metromedia, Inc. v. Director, Division of Taxation,* 97 N.J. 313, 478 A.2d 742, 751 (1984). These criteria may, either singly or in combination, determine in a given case whether the agency action in question must be rendered through rulemaking or adjudication. *Id.*

When making this type of inquiry under Iowa law, we of course look to the IAPA for guidance. The IAPA's definition of "rule" has both inclusionary and exclusionary components. The term "rule" means: "[E]ach agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure or practice requirements of any agency.... The term includes the amendment or repeal of an existing rule...." Iowa Code § 17A.2(10). On the other hand the IAPA also lists eleven exemptions to this inclusionary definition, including: (1) a declaratory ruling or an interpretation issued by an agency with respect to a specific set of facts and intended to apply only to that specific set of facts; and (2) a determination, decision, or order in a contested case. Iowa Code §§ 17A.2(10)(b), (d).

When applying this definition with regard to a particular agency action, we are instructed to construe the term "rule" broadly to effectuate the purposes of the IAPA. Iowa Code § 17A.23. One such purpose is to increase the opportunity for members of the public to participate in the formulation of the administrative policy which affects them. Iowa Code § 17A.1(2). Consequently, the close case should be treated as rulemaking. Bonfield at 829.

Applying these principles to the present case, it is apparent that the challenged actions of the department amounted to rulemaking. The breadth of the IAPA's definition of "rule" is notable in two respects. First is use of the term "statement." Previously the Code had defined "rule" to mean "any rule, regulation, order or standard of

general application...." Iowa Code § 17A.1(3) (1973). The current IAPA definition of "rule" uses the word "statement" in place of the word "standard." This change was intended to prevent the widespread propensity of agencies to evade mandatory rulemaking procedures by (mis)labeling agency action as "bulletins," "guidelines," "policies," "interpretative bulletins," and the like when such pronouncements, in legal effect and operation, really amount to rules. Bonfield at 827.

The second important aspect of the IAPA's definition is use of the phrase "of *general* applicability" to modify the word "statement." Iowa Code § 17A.2(10) (emphasis added). The result is that "every statement made by an agency which is directed at all persons similarly situated rather than to named individuals is covered by this inclusionary definition." Bonfield at 827. In contrast statements of "particular applicability" will normally, but not necessarily,[4] fall within the scope of the contested case approach.

When determining whether the department's activities here fall within the IAPA's definition of rulemaking, the wording of the department's May 3, 1994, letter to the utilities is especially enlightening. The letter informed the utilities that the department "ha[d] made a decision concerning adjustments to balance sheet accounts for FAS 106 and FAS 109." In making this determination the department considered presentations made by the utilities, consulted various other states, and had discussions with other parties concerning the issue. It also took into account its desire for audited financial statements, the practical impact requiring reversal of all past, present, and future accounting standard changes, and the results of calculations with and without inclusion of FAS 106 and FAS 109 showing negligible differences in valuations.

I think such an in-depth analysis can only be construed as *de facto* rulemaking. The department's decision constitutes a "statement of general applicability" within the meaning of Iowa Code section 17A.2(10).

---

4. *See NLRB v. Wyman–Gordon,* 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (adjudication resulted in a rule not promulgated in accord with rulemaking procedure); *Young Plumbing,* 276 N.W.2d at 382–83 (rejecting this result under Iowa law).

**548**

When an agency attempts to broadly apply a pronouncement as having the force of law, instead of narrowing the application to a particular individual and set of circumstances, the agency proceeds in a legislative manner characteristic of rulemaking. *Young Plumbing,* 276 N.W.2d at 382. An advisory interpretation of a statute that has been adopted by an agency to aid it in the discharge of its functions must be submitted to the rulemaking process. *See Doe v. Iowa State Bd. of Physical Therapy,* 320 N.W.2d 557, 561 (Iowa 1982). I think the department's action fails the test espoused in *Metromedia.*

Moreover the department's inquiry seems to focus, not on whether it *could* include the new accounting standards in its valuation assessments, but whether it *should.* The department held the functional equivalent of hearings and studied the impact of including the new entries in valuation calculations. No reference was made to Iowa Administrative Code rule 701–77 until five months later in the declaratory ruling on IES's petition. This appears to be a post hoc rationalization of a predetermined policy decision. The department's actions speak louder than its words: one would think that if the department truly believed that its existing rule encompassed the FAS entries at issue, it would merely have issued the assessments without permitting either the utilities the opportunity to make their case, or by putting forth any effort to determine exactly what the impact would be by including the challenged standards. The department's decision reflected a policy of general application and future effect which must be considered invalid without formal adoption as a rule. *See Ford v. Iowa Dep't of Human Servs.,* 500 N.W.2d 26, 30 (Iowa 1993).

I would not hold the department was precluded from hedging and resolving the matter in the adjudicatory process. At times an agency may not have sufficient experience with an administrative problem "to warrant rigidifying its tentative judgment into a hard and fast rule." *Chenery,* 332 U.S. at 202, 67 S.Ct. at 1580; 91 L.Ed. at 2002; *Ford,* 500 N.W.2d at 30. For that reason agencies are granted the discretion to address problems posed by new legislation on a case-by-case examination of particularized facts, rather than by general rule. *Id.* Here the department could have simply determined that Iowa Administrative Code rule 701–77 permits consideration of FAS 87, FAS 106, and FAS 109, included the new entries in its valuation methodologies, and addressed any questions of over or under valuation on a case-by-case basis through its informal review process or on an Iowa Code chapter 429 appeal to the state board of tax review. But once the department decided to proceed in a rulemaking fashion, it was required to follow the formal rulemaking procedures outlined in Iowa Code section 17A.4.

Because the agency, in the action challenged, was involved in rulemaking, the district court ruling on the motion to dismiss should be reversed and the case remanded for a determination on the merits.