# IN THE SUPREME COURT OF IOWA

No. 12–0919

Filed May 9, 2014

**NICOLE LARA SHUMATE,**

Appellant,

vs.

**DRAKE UNIVERSITY** a/k/a **DRAKE UNIVERSITY LAW SCHOOL,**

Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.

Appellee seeks further review of court of appeals decision reinstating private lawsuit by service dog trainer alleging denial of access rights under Iowa Code chapter 216C. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Felicia Bertin Rocha of Bertin Rocha Law Firm, Urbandale, for appellant.

Andrew J. Bracken, Amanda G. Jansen, and Nicholas J. Pellegrin of Ahlers & Cooney, P.C., Des Moines, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether Iowa Code chapter 216C, entitled "Rights of Persons with Physical Disabilities," implicitly provides a service dog trainer a private right to sue. Plaintiff, who works as a service dog trainer but is not disabled, alleges that while she was a student at Drake University Law School (Drake) she was barred from bringing a dog she was training into the classroom and to another event with her. She sued Drake to vindicate the access rights created in Iowa Code section 216C.11(2) (2009), which provides that a violation of the statute is a simple misdemeanor but does not expressly provide any civil remedy.

The district court granted Drake's motion to dismiss, ruling section 216C.11(2) creates no private enforcement action. The court of appeals reversed and reinstated the lawsuit, holding that under our four-part test adopted from *Cort v. Ash*, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975), a service dog trainer has an implied cause of action to sue for money damages and other relief. We granted Drake's application for further review.

For the reasons explained below, we decline Drake's invitation to abandon our four-part test for determining whether an Iowa statute provides an implied private right of action. We reiterate that the dispositive factor is the intent of the legislature and that the other factors help to ascertain legislative intent. Applying the *Cort* factors, we hold section 216C.11(2) does not provide a service dog trainer with a private right to sue because closely related statutes expressly create private enforcement actions to aid the disabled while chapter 216C does not, and an implied right of action under chapter 216C would circumvent the procedures of the Iowa Civil Rights Act (ICRA). We conclude the

legislature purposely omitted a private right to sue from chapter 216C. Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the district court dismissing plaintiff's lawsuit against Drake.

## I. Background Facts and Proceedings.

Nicole Lara Shumate enrolled at Drake in June 2006 and graduated in December 2009. Shumate had trained service dogs for many years, and in her first semester of law school, she founded Iowa's first service dog training nonprofit organization: Paws and Effect.

On August 29, 2011, Shumate filed a lawsuit alleging Drake discriminated against her in violation of Iowa Code chapter 216C. Shumate claimed she was denied access to law school classes on September 1, 2009, because she was accompanied by a dog she was training. Shumate alleged the law school dean told her that day that "access to law school facilities with a service dog in training would not be tolerated per the university policy." Then, on September 6, a law professor denied Shumate and her dog entry to a cultural event at a local church. Shumate also alleged Drake humiliated and harassed her because of her attempts to bring the dog she was training on campus, and Drake thereby created a "poisonous learning environment."

On November 18, 2011, Drake filed a motion to dismiss Shumate's action under Iowa Rule of Civil Procedure 1.421, arguing "as a matter of law, there is no private right of action under Iowa Code chapter 216C." Drake "emphatically denie[d] that it ever excluded Shumate from class or any Drake-sponsored event because she had a service-dog-in-training with her," but acknowledged the factual allegations of the petition are taken as true for purposes of its motion to dismiss. On April 5, 2012, the district court held a nonevidentiary hearing on the motion. On

April 16, the district court issued its ruling dismissing Schumate's petition. To determine if chapter 216C gives service dog trainers the right to sue, the district court applied the four-factor *Cort* test our court adopted in *Seeman v. Liberty Mutual Insurance Co.*, 322 N.W.2d 35, 38 (Iowa 1982):

> 1. Is the plaintiff a member of the class for whose benefit the statute was enacted?
>
> 2. Is there any indication of legislative intent, explicit or implicit, to either create or deny such a remedy?
>
> 3. Would allowing such a cause of action be consistent with the underlying purpose of the legislation?
>
> 4. Would the private cause of action intrude into an area over which the federal government or a state administrative agency holds exclusive jurisdiction?

*Marcus v. Young*, 538 N.W.2d 285, 288 (Iowa 1995) (citing *Seeman*, 322 N.W.2d at 38).

The district court concluded that, although Shumate satisfied the first factor, she failed to establish the second, third, and fourth factors. The district court first acknowledged Iowa Code section 216C.11(2) gives a service dog trainer the right to be accompanied by the dog in certain locations and determined Shumate, therefore, is a member of the class that statute was enacted to benefit. But, the district court further noted that, under Iowa Code section 216C.11(3), a person who interferes with this right can be charged with a simple misdemeanor. Citing "the maxim *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another," the district court found the fact the legislature provided for a criminal penalty in section 216C.11(3) indicated it did not intend to allow a civil action under that statute. Additionally, the district court found chapter 216E instructive. That chapter governs assistive devices and expressly provides a private right of action for disabled

persons in Iowa Code section 216E.6(3). The district court ruled "[t]his is an indication that the legislature did not create such a right in Chapter 216C; had it intended to do so it would have used language similar to that in Chapter 216E." Finally, the district court concluded that allowing a private right to sue under section 216C.11(2) would permit disabled persons to circumvent the jurisdiction of the Iowa Civil Rights Commission (ICRC). The district court therefore granted Drake's motion to dismiss.

Shumate appealed, and we transferred her case to the court of appeals. The court of appeals held chapter 216C grants Shumate the right to sue. Applying the same four-factor *Cort* test, the court of appeals concluded each factor favors Shumate. The court of appeals cited Iowa Code section 611.21, which prevents the merger of a civil remedy into a criminal offense. Based on this statute, the court of appeals disagreed with the district court's finding that the misdemeanor punishment in section 216C.11(3) was the sole remedy for a violation of section 216C.11(2). The court of appeals, however, failed to address the district court's conclusion that the express grant of a right to sue under Iowa Code section 216E.6(3) indicates the legislature purposefully omitted such a right from Iowa Code chapter 216C. Regarding the third factor, the court of appeals stated:

> The fact persons with disabilities have a different route for enforcing the provisions of chapter 216 does not undermine the effectiveness of a private lawsuit for persons expressly included within, and whose rights are violated under, chapter 216C. We perceive no inconsistency between these separate remedies.

Finally, the court of appeals concluded a private right to sue under section 216C.11(2) would not interfere with the ICRC's ability to adjudicate claims under chapter 216. The court of appeals reasoned:

Shumate's ability to enforce her right to be accompanied by a service dog by filing a petition in court does not interfere with the rights of disabled persons to file administrative complaints about discriminatory practices under chapter 216. The legislature is free to craft a more complex investigation and mediation system under one chapter while leaving open a more direct route to remedying a violation under another chapter.

The court of appeals reversed the dismissal of Shumate's claim and remanded the case for further proceedings.

We granted Drake's application for further review.

**II. Scope of Review.**

" 'We review a district court's ruling on a motion to dismiss for the correction of errors at law.' " *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012) (quoting *Dier v. Peters*, 815 N.W.2d 1, 4 (Iowa 2012)). The purpose of a motion to dismiss is "to test the legal sufficiency of the petition." *Geisler v. City Council of Cedar Falls*, 769 N.W.2d 162, 165 (Iowa 2009). For purposes of reviewing a ruling on a motion to dismiss, we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions. *See Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 8 (Iowa 2006). We will affirm a district court ruling that granted a motion to dismiss when the petition's allegations, taken as true, fail to state a claim upon which relief may be granted. *Mueller*, 818 N.W.2d at 253.

**III. Does Chapter 216C Implicitly Create a Private Right to Sue for Service Dog Trainers?**

"Not all statutory violations give rise to a private cause of action. A private statutory cause of action exists 'only when the statute, explicitly or implicitly, provides for such a cause of action.' " *Mueller*, 818 N.W.2d at 254 (quoting *Sanford v. Manternach*, 601 N.W.2d 360, 371 (Iowa 1999)). "A private right of action is the right of an individual to bring suit

to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement." *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d Cir. 2007) (footnote omitted). Because Iowa Code section 216C.11(2) does not expressly provide for a private cause of action, we must decide if the right to sue is implicit in that statute.

To determine if a statute implicitly creates the right to sue, we ask if the legislature intended "to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S. Ct. 1511, 1519, 149 L. Ed. 2d 517, 528 (2001). In ascertaining the legislature's intent, we have employed the four-factor test adopted in *Seeman*. *See, e.g.*, *Mueller*, 818 N.W.2d at 254; *Marcus*, 538 N.W.2d at 288; *Engstrom v. State*, 461 N.W.2d 309, 315–16 (Iowa 1990). We modified the United States Supreme Court's "basic analytical approach," as expressed in *Cort*. *See Seeman*, 322 N.W.2d at 40 (modifying the fourth *Cort* factor for state-law application, "[s]ince the fourth factor of that test concerns federal jurisdiction"). Under this test, we consider (1) whether "the plaintiff [is] a member of the class for whose special benefit the statute was enacted"; (2) "[l]egislative intent, either explicit or implicit, to create or deny a remedy"; (3) whether "a private cause of action [is] consistent with the underlying purpose" of the statute; and (4) whether "the implication of a private cause of action [will] intrude into an area over which the federal government has exclusive jurisdiction or which has been delegated exclusively to a state administrative agency." *Id.* at 41–43 (emphasis omitted). We most recently used this four-factor test in *Mueller,* although no party in that case urged us to abandon or modify the test. 818 N.W.2d at 254.

**A. Should We Abandon Iowa's Four-Factor *Cort* Test?** Drake urges us to abandon the four-factor *Cort* test, arguing the United States

Supreme Court supplanted the *Cort* test in *Sandoval*. Drake asserts the sole inquiry after *Sandoval* is whether the legislature intended to create a private right of action. *See Sandoval*, 532 U.S. at 286, 121 S. Ct. at 1519, 149 L. Ed. 2d at 528 ("Statutory intent . . . is determinative."). Many courts have indeed departed from the *Cort* factors. *See, e.g., Wisniewski*, 510 F.3d at 301 ("After *Sandoval*, the relevant inquiry for determining whether a private right of action exists appears to have two steps: (1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy?"); *Love v. Delta Air Lines*, 310 F.3d 1347, 1351–52 (11th Cir. 2002) ("Since the late 1970s, the Supreme Court has gradually receded from its reliance on three of these four factors, focusing exclusively on legislative intent to create a private right of action as the touchstone of its analysis. *Sandoval* is the culmination of this trend . . . ." (Footnote omitted.)); *Leach v. Mediacom*, 240 F. Supp. 2d 994, 997 (S.D. Iowa 2003) ("*Sandoval* clarifies the proper approach for courts to take when analyzing implied rights of action. Rather than undertaking the four-factors approach of *Cort*, the sole factor a court must consider is whether Congress intended to create a private right of action."), *aff'd*, 373 F.3d 895 (8th Cir. 2004); *Grey v. Walgreen Co.*, 967 N.E.2d 1249, 1252 (Ohio Ct. App. 2011) ("There is ample authority for the proposition that the *Cort* test is no longer valid. The United States Supreme Court has gradually focused on the single factor of whether there was a legislative intent to grant a private right of action."); *see also Thompson v. Thompson*, 484 U.S. 174, 189, 108 S. Ct. 513, 521, 98 L. Ed. 2d 512, 526 (Scalia, J., concurring in judgment) ("It could not be plainer that we effectively overruled the *Cort v. Ash* analysis . . . converting one of its four factors (congressional intent) into *the*

*determinative factor*, with the other three merely indicative of its presence or absence." (Citations omitted.)).

We agree with Drake that legislative intent is the most important factor in our analysis, but this is not a new development in our caselaw. From the beginning, when we adopted the *Cort* factors in *Seeman,* we recognized the second *Cort* factor is determinative. We stated then: "Our cases subsequent to *Cort v. Ash,* have plainly stated that our focus must be on the intent of Congress. 'The key to the inquiry is the intent of the Legislature.' " *Seeman,* 322 N.W.2d at 39 (citation omitted) (quoting *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S. Ct. 2615, 2622, 69 L. Ed. 2d 435, 446 (1981)). We reiterated: "As in all matters of statutory construction, the question whether a private cause of action exists under a statute that does not expressly provide for one is a matter of legislative intent." *Seeman,* 322 N.W.2d at 40. Though we adopted and modified the *Cort* test, we emphasized "that when legislative intent is otherwise clear, it is not necessary to resort to the four-factor test." *Id.* But, "when legislative intent is not otherwise clear the *Cort* test should be utilized to determine that intent." *Id.* Accordingly, since *Seeman,* our inquiry into whether a private right to sue exists turns on our determination of legislative intent.[1]

---

[1]*See Mueller,* 818 N.W.2d at 258 ("We do not believe the legislature intended to create a private cause of action to allow civil juries to second-guess conduct approved by the insurance commissioner and subject to judicial review from administrative proceedings."); *Raas v. State,* 729 N.W.2d 444, 447 (Iowa 2007) ("The 'most relevant inquiry' is whether there is any indication of legislative intent to create a private cause of action." (quoting *Kolbe v. State,* 625 N.W.2d 721, 727 (Iowa 2001))); *Stotts v. Eveleth,* 688 N.W.2d 803, 809 (Iowa 2004) ("Section 272.2 provides not even a hint that the legislature intended to provide a private cause of action for such violations."); *Meinders v. Dunkerton Cmty. Sch. Dist.,* 645 N.W.2d 632, 637 (Iowa 2002) (concluding "the lack of any sign that the legislature intended to create such an action is fatal to Meinders' case"); *Kolbe,* 625 N.W.2d at 727 ("[W]e address only the second factor, which is the most relevant inquiry here: Is there any indication of legislative intent, explicit or

We reaffirm this approach today. Our "central inquiry" is whether the legislature intended to create a private right to sue. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S. Ct. 2479, 2489, 61 L. Ed. 2d 82, 96 (1979). If the text and structure of a statute are unambiguous, we need not consider whether a private cause of action would be consistent with the purpose of the legislation or would intrude into an area over which the federal government or a state administrative agency holds exclusive jurisdiction. Yet, when "the text and structure are either ambiguous or support the existence of a private right of action, . . . other methods of statutory interpretation, including the *Cort* factors, may continue to inform a court's analysis." *Wisniewski*, 510 F.3d at 312–13 (Sloviter, J., dissenting); *see also Mueller*, 818 N.W.2d at 256 (noting legislative history "confirms the legislature intended H.F. 2219 to be regulatory in nature"); *Kolbe v. State*, 625 N.W.2d 721, 727 (Iowa 2001) ("In determining whether there is any indication of legislative intent to implicitly create a cause of action, we . . . consider[] the purpose for which the statute was created."). Legislative intent "remains the

---

implicit, to either create or deny such a remedy?"); *Teague v. Mosley*, 552 N.W.2d 646, 651 (Iowa 1996) ("Considering these factors, we conclude that the legislature did not intend to create a private cause of action for a violation of a duty to inspect under Iowa Code section 331.322(10)."); *Marcus*, 538 N.W.2d at 290 (affirming grant of summary judgment when plaintiff could not show "the legislature intended to create an implied cause of action or that such a remedy would be consistent with the underlying purposes of the statute"); *Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, 260 (Iowa 1991) ("To hold that chapter 507B creates a private cause of action would be in direct contradiction to existing Iowa law and would create a cause of action not intended by the legislature."); *Engstrom*, 461 N.W.2d at 316 ("We conclude that the legislature did not intend to create this private cause of action."); *Black v. First Interstate Bank of Fort Dodge*, 439 N.W.2d 647, 649 (Iowa 1989) ("We need not employ the test adopted in *Seeman*, however, because legislative intent in this instance is otherwise clear."); *Unertl v. Bezanson*, 414 N.W.2d 321, 326 (Iowa 1987) (finding no implied cause of action when "[a]n examination of the contents of chapter 536A confirms that it was intended as a regulatory measure"); *M.H. by and through Callahan v. State*, 385 N.W.2d 533, 537 (Iowa 1986) ("We believe it is clear that in enacting Iowa Code sections 232.67–.71 and 25A.14 the legislature did not intend to imply a tort action . . . .").

ultimate issue, however, and 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.' " *Thompson*, 484 U.S. at 179, 108 S. Ct. at 516, 98 L. Ed. 2d at 520 (quoting *Nw. Airlines, Inc. v. Transp. Workers*, 451 U.S. 77, 94, 101 S. Ct. 1571, 1582, 67 L. Ed. 2d 750, 765 (1981)). If the legislature did not intend to create a private cause of action, "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286–87, 121 S. Ct. at 1520, 149 L. Ed. 2d at 528. Thus, we will continue to use the *Cort* factors when helpful to ascertain legislative intent.

**B. Did the Legislature Intend Section 216C.11(2) to Create a Private Right to Sue for Service Dog Trainers?** We now turn to the relevant statutory language. Iowa Code section 216C.11(2) is found within the chapter entitled "Rights of Persons with Physical Disabilities," under the Iowa Code subtitle "Social Justice and Human Rights." The purpose of this chapter is set forth in section 216C.1, which provides:

> It is the policy of this state to encourage and enable persons who are blind or partially blind and persons with physical disabilities to participate fully in the social and economic life of the state and to engage in remunerative employment.
>
> To encourage participation by persons with disabilities, it is the policy of this state to ensure compliance with federal requirements concerning persons with disabilities.

Iowa Code § 216C.1. Section 216C.11 creates access rights and states:

> 1. For purposes of this section "*service dog*" means a dog specially trained at a recognized training facility to assist a person with a disability, whether described as a service dog, a support dog, an independence dog, or otherwise. "*Assistive animal*" means a simian or other animal specially trained or in the process of being trained under the auspices

of a recognized training facility to assist a person with a disability.[2]

2. A person with a disability or person training an assistive animal has the right to be accompanied by a service dog or an assistive animal, under control, in any of the places listed in sections 216C.3 and 216C.4[3] without being required to make additional payment for the service dog or assistive animal. A landlord shall waive lease restrictions on the keeping of animals for the service dog or assistive animal of a person with a disability. The person is liable for damage done to any premises or facility by a service dog or assistive animal.

3. A person who knowingly denies or interferes with the right of a person under this section is, upon conviction, guilty of a simple misdemeanor.

Iowa Code § 216C.11.[4] Section 216C.11 does not expressly allow service dog trainers to bring a private cause of action, nor does any other Code

---

[2]Drake argues Shumate did not specifically plead facts sufficient to be covered by Iowa Code section 216C.11(2). Drake points to language in section 216C.11(1) defining "service dog" as "a dog specially trained at a recognized training facility" and asserts Shumate did not claim she was associated with an officially recognized facility. The court of appeals explained the legislative history of this provision:

> The legislature amended Iowa Code section 216C.11(1) in 2010 to delete the reference to "a recognized training facility" regarding both service dogs and assistive animals. *See* 2010 Iowa Acts ch. 1079, § 9. The legislature also deleted reference to "a recognized training facility" in Iowa Code section 216C.10, entitled "use of a hearing dog." *See* 2010 Iowa Acts ch. 1079, § 8.

This amendment was enacted after the conduct at issue. In any event, under Iowa's liberal notice-pleading standards, "a court should grant a motion to dismiss only if the petition on its face shows no right of recovery under any state of facts. Nearly every case will survive a motion to dismiss under notice pleading." *Hawkeye Foodservice Distribution, Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 609 (Iowa 2012) (internal quotation marks omitted). We do not affirm the dismissal in this case based on Shumate's failure to plead her association with a recognized training facility. Rather, we affirm the dismissal based on the absence of an implied private right to sue under section 216C.11(2).

[3]Drake does not dispute that its classrooms and the local church hosting a community event are included as "places listed in sections 216C.3 and 216C.4." *See* Iowa Code § 216C.11(2).

[4]In 1988, the legislature enacted Iowa Code section 601D.11, entitled "Service Dogs," to "extend[] rights granted blind and deaf persons to use guide dogs and hearing dogs, to persons with other disabilities or handicaps which have service dogs specially trained to assist them." S.F. 456 Explanation, 72d G.A., 2d Sess. (Iowa 1988). As

section. Iowa Code section 216C.11(3) does, however, provide that a violation of this section is a simple misdemeanor. And, section 216C.7, entitled "Penalty for denying rights," also provides that a party "who denies or interferes with the rights of any person under this chapter shall be guilty of a simple misdemeanor." *Id.* § 216C.7 (2009).

We agree with the district court and the court of appeals that the first *Cort* factor is satisfied—Shumate is a member of the class the legislature intended to benefit by enacting section 216C.11(2). Section 216C.11(2) expressly grants a "person training an assistive animal . . . the *right* to be accompanied by a service dog or an assistive animal." *Id.* § 216C.11(2) (emphasis added). Shumate thus satisfies our threshold inquiry. *Cf. Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 n.3, 122 S. Ct. 2268, 2276 n.3, 153 L. Ed. 2d 309, 321 n.3 (2002) ("Where a statute does not include this sort of explicit right- or duty-creating language, we rarely impute to Congress an intent to create a private right of action." (Internal quotation marks omitted.)).

We also agree with the court of appeals that Shumate satisfies the third *Cort* factor. By facilitating the training of service dogs to increase their availability, the legislature sought to achieve the overarching goal of chapter 216C—"to encourage and enable persons who are blind or partially blind and persons with physical disabilities to participate fully

_____

enacted, Iowa Code section 601D.11 allowed only "[a] disabled or handicapped person" the "right to be accompanied by a service dog." 1988 Iowa Acts ch. 1067, § 1 (codified at Iowa Code § 601D.11 (1989)). In 1991, the legislature expanded this section, changing the title to "Service Dogs and Assistive Animals," and added language granting a "person training an assistive animal" the "right to be accompanied by a service dog or an assistive animal." 1991 Iowa Acts ch. 69, § 1 (codified at Iowa Code § 601D.11 (Supp. 1991)). This section was transferred from Iowa Code section 601D.11 to Iowa Code 216C.11 in 1993. *See* Iowa Code § 216.11 (1993). We see no indication in this legislative history that a private right of action was intended.

in the social and economic life of the state and to engage in remunerative employment." Iowa Code § 216C.1. Specifically, the access rights in section 216C.11(2) enable a trainer to bring a dog in training into public buildings to simulate situations the dog will encounter when placed in service with a disabled person. The trainer is given access rights to facilitate the training the dog requires. But, the legislature's purpose to allow access does not necessarily equate to an intent to allow a private lawsuit to enforce that right if access is denied.

We conclude Shumate fails the second, and determinative, *Cort* factor—legislative intent. The legislature expressly provided for private causes of action in both chapters 216 and 216E. *See* Iowa Code § 216.15; *id.* § 216E.6(3). As the district court aptly stated, "This is an indication that the legislature did not create such a right in Chapter 216C; had it intended to do so it would have used language similar to that in Chapter 216E." These closely related chapters demonstrate that when the legislature "wished to provide a private damage remedy, it knew how to do so and did so expressly." *Redington*, 442 U.S. at 572, 99 S. Ct. at 2487, 61 L. Ed. 2d at 93. We thus conclude the legislature did not intend to allow service dog trainers to sue to enforce the access rights created by Iowa Code section 216C.11(2).

Iowa Code chapter 216, the ICRA, expressly creates both rights and remedies for those who suffer discrimination based on disability.[5]

---

[5]The legislature created the ICRC in 1965 "to eliminate unfair and discriminatory practices in public accommodations, employment, apprenticeship programs, on-the-job training programs, and vocational schools and to permit the study of discrimination in housing." 1965 Iowa Acts ch. 121 (codified at Iowa Code ch. 105A (1966)). The ICRA prohibited discrimination "because of race, creed, color, national origin, or religion." *See* Iowa Code §§ 105A.6, .7, .8 (1965). In 1972, the legislature enacted an amendment "relating to the civil rights of physically and mentally handicapped persons" that expanded the protections of that chapter to those with disabilities. 1972 Iowa Acts ch. 1031, §§ 2, 3, 4 (codified at Iowa Code §§ 601A.6, .7, .8

*See, e.g.,* Iowa Code § 216.7 (2009) ("Unfair practices—accommodations or services"); *id.* §§ 216.15, .16 (setting forth procedures for the filing of complaints and lawsuits under chapter 216).[6]  Chapter 216E governs "assistive devices," which are defined as devices that are used "to increase, maintain, or improve the functional capabilities of individuals with disabilities."  Iowa Code § 216E.1(1).  Chapter 216E.6 expressly confers on consumers of assistive devices a private right to sue.  It states:

> In addition to pursuing any other remedy, a consumer may bring an action to recover any damages caused by a violation of this chapter.  The court shall award a consumer who prevails in such an action no more than three times the amount of any pecuniary loss, together with costs and reasonable attorney fees, and any equitable relief that the court determines is appropriate.

*Id.* § 216E.6(3).[7]

The legislature provided no such express right to sue in chapter 216C, nor did it include service dog trainers under the ambit of chapter 216.  We find these omissions telling.  *See Engstrom,* 461 N.W.2d at 316 (concluding statute was not enacted for benefit of adoptive parents when related Code chapters "specifically considered" natural parents and

---

(1973)) (amending the ICRA to prohibit discrimination "because of race, creed, color, sex, national origin, religion, *or disability*" (emphasis added)).  Notably, the federal government did not pass legislation prohibiting discrimination based on disability until 1990.  *See* Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 (Supp. II 1990)).  Senator Tom Harkin of Iowa authored that legislation and was its chief sponsor in the Senate.  *See* S. Res. 933, 101th Cong. (1989) (enacted).

[6]Even though Shumate trains dogs to assist the disabled, she is not covered by chapter 216 because she is not a person with a disability.  *See* Iowa Code § 216.2(5) (defining "disability" in the context of the ICRA).  Shumate filed a complaint under chapter 216, and the ICRC dismissed this complaint for lack of jurisdiction.

[7]The legislature enacted chapter 216E in 1998.  1998 Iowa Acts ch. 1042 (codified at Iowa Code ch. 216E (1998)).  Iowa Code section 216E.6(3) has undergone no subsequent amendments.

granted them rights); *M.H. by and through Callahan v. State*, 385 N.W.2d 533, 537 (Iowa 1986) ("[T]he legislature has explicitly addressed situations when civil liability attaches. If the legislature wanted to recognize other statutory violations that would produce civil liability, it would have so indicated."); *see also Pinter v. Dahl*, 486 U.S. 622, 650, 108 S. Ct. 2063, 2080, 100 L. Ed. 2d 658, 684 (1988) ("When Congress wished to create such liability, it had little trouble doing so."); *Univs. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 773, 101 S. Ct. 1451, 1463, 67 L. Ed. 2d 662, 677 (1981) (citing statutes that expressly granted remedies, noting "absence of a comparable provision [in statute at issue] buttresses our conclusion that Congress did not intend to create such a remedy"); *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 20, 100 S. Ct. 242, 247, 62 L. Ed. 2d 146, 155 (1979) (finding it significant that, "[u]nder each of the securities laws that preceded the Act here in question, and under the Investment Company Act of 1940 which was enacted as companion legislation, Congress expressly authorized private suits for damages in prescribed circumstances"); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 734, 95 S. Ct. 1917, 1925, 44 L. Ed. 2d 539, 548 (1975) ("When Congress wished to provide a remedy . . . it had little trouble in doing so expressly."); *cf. Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 165, 128 S. Ct. 761, 773, 169 L. Ed. 2d 627, 642 (2008) (recognizing "[c]oncerns with the judicial creation of a private cause of action" and noting "the determination of who can seek a remedy has significant consequences of federal power").

The fourth *Cort* factor also cuts against Shumate. If we were to read chapter 216C as impliedly creating a private right of action, disabled individuals who would otherwise be required to file claims first

with the ICRC would be able to file directly in district court. This would intrude on the jurisdiction of that state agency. Section 216C.11(2) creates access rights for both disabled persons and for service animal trainers who are not disabled. We see no way to imply a private right of action under that section for trainers but not disabled persons using service animals. The legislature would not have intended only some people protected by chapter 216C to have a private right of action, but not others.

As the district court recognized, a private right of action for disabled individuals under chapter 216C would "circumvent the procedures of the Iowa Civil Rights Act . . . intrud[ing] into an area where the Iowa Civil Rights Commission has jurisdiction." We agree. We do not believe the legislature, when it enacted chapter 216C, intended to allow persons alleging disability discrimination to circumvent the carefully prescribed procedures in the ICRA. And, although service dog trainers are not within the ambit of the ICRA, it would be incongruous to allow them direct access to district court when persons with disabilities must file first with the agency and satisfy the other procedural requirements of the ICRA.

Chapter 216, the ICRA, requires persons with a disability to follow specific procedures to vindicate the rights created by the chapter. *See* Iowa Code §§ 216.15, .16. Namely, an aggrieved party must file a complaint with the ICRC. *Id.* § 216.15(1).

> When a complaint is filed, the ICRC staff completes an investigation and submits a recommendation to an ALJ [administrative law judge], who then makes a determination whether there is probable cause to believe a discriminatory practice has occurred. *Id.* § 216.15(3)(*a*). If the ALJ concurs that probable cause exists, the ICRC "shall promptly endeavor to eliminate the discriminatory or unfair practice

by conference, conciliation, and persuasion." *Id.* § 216.15(3)(*c*).

*Rent-A-Ctr., Inc. v. Iowa Civil Rights Comm'n*, 843 N.W.2d 727, 731 (Iowa 2014). A person can sue under chapter 216 only after filing a complaint with the ICRC and receiving a right-to-sue letter. *Ackelson v. Manley Toy Direct, L.L.C.,* 832 N.W.2d 678, 679, 680 n.1 (Iowa 2013); *see also* Iowa Code § 216.16(2) (stating requirements that must be met to receive a right-to-sue letter).

The benefits of this procedural framework are manifold: the ICRA allows an agency with expertise to provide a broad spectrum of relief, with little to no cost to a complainant. *See* Merle Wilna Fleming, Note, *Implications of the Right-to-Sue Amendment to Iowa's Civil Rights Law*, 65 Iowa L. Rev. 720, 744–45 (1980) (discussing the ICRA's advantages for complainants); *cf. Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 189 (Iowa 2013) ("The exhaustion requirement in section 17A.19 'has several purposes, including honoring agency expertise, handling matters within an agency and not in the courts, and preserving precious judicial resources.'" (quoting *IES Utils., Inc. v. Iowa Dep't of Revenue & Fin.*, 545 N.W.2d 536, 538 (Iowa 1996))). This is a confidential process, unlike most court proceedings. *See* Iowa Code § 216.15(4). The ICRA processes give the complainant an opportunity to negotiate with employers, with the help of conciliation and mediation services. *Cf. Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003) (discussing this benefit of administrative exhaustion in Title VII cases, stating the Equal Employment Opportunity Commission process is "useful" and "should be encouraged"). *See generally* Iowa Civil Rights Comm'n, 2013 Annual Report 12 (2013) [hereinafter ICRC 2013 Report] *available at* https://icrc.iowa.gov/document/2013-annual-report

(reporting that fourteen percent of case closings in 2012–2013 were classified as either "satisfactory adjustment/mediation," "successful conciliation," or "withdrawal/satisfactory adjustment"). The ICRA processes also serve to weed out cases that " 'do not warrant further processing.' " *See Ritz v. Wapello Cnty. Bd. of Supervisors*, 595 N.W.2d 786, 791 (Iowa 1999) (quoting Iowa Admin. Code r. 161—3.12(1)(*h*)); *see also* ICRC 2013 Report 12 (noting that 807 of the 2182 cases closed by the ICRC in 2012–2013 were categorized as "does not warrant further investigation/administrative closure"). Furthermore, unlike the courts, the ICRC is empowered to investigate discrimination, conduct research, publish reports, make legislative recommendations, and adopt regulations based on its findings. *See* Iowa Code § 216.5(3), (6), (8), (10).

Recognizing an implied right to sue under chapter 216C would interfere with the enforcement procedures of chapter 216 because several protections afforded under chapter 216C are duplicative of those found in chapter 216. Iowa Code section 216.6, entitled "Unfair employment practices," prohibits employers from discriminating against persons with disabilities, while Iowa Code section 216C.2 grants those with disabilities the right to be employed by the state "on the same terms and conditions as other persons." Iowa Code section 216.7(1), entitled "Unfair practices — accommodations or services," prohibits discrimination in "accommodations, advantages, facilities, services, or privileges thereof" based on disability.[8] Iowa Code section 216C.4, entitled

---

[8]"*Public accommodation*" is defined as

each and every place, establishment, or facility of whatever kind, nature, or class that caters or offers services, facilities, or goods for a fee or charge to nonmembers of any organization or association utilizing the place, establishment, or facility, provided that any place, establishment, or facility that caters or offers services, facilities, or goods to the

"Accommodations," then provides that those with disabilities "are entitled to full and equal accommodations, facilities, and privileges."[9]  Disabled persons assisted by service dogs are governed by the procedures under chapter 216 when bringing discrimination claims.  *See, e.g., Dohmen v. Iowa Dep't for the Blind,* 794 N.W.2d 295, 300 (Iowa Ct. App. 2010) (affirming judgment in case in which blind plaintiff, who obtained a right-to-sue letter from the ICRC, sued to enforce her right to attend an "Orientation and Adjustment to Blindness" program with her guide dog).

In light of this overlap, implying private rights of action under 216C would create an alternative enforcement mechanism for those with disabilities—allowing them to file directly in district court instead of following the procedures of chapter 216.  Although implying a private right of action under chapter 216C for only service dog trainers and not for disabled individuals would avoid this issue, there is no textual basis to imply a private right of action for some persons protected by chapter 216C, but not others.  For the foregoing reasons, allowing a private cause of action to enforce the rights granted in chapter 216C would evade the comprehensive procedures set forth in chapter 216.  Under the fourth *Cort* factor, this militates against recognizing a private right of action in section 216C.11(2).

---

nonmembers gratuitously shall be deemed a public accommodation if the accommodation receives governmental support or subsidy.

Iowa Code § 216.2(13).

[9]Iowa Code section 216C.4 gives those with disabilities full and equal rights to

all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, other public conveyances or modes of transportation, hotels, lodging places, eating places, places of public accommodation, amusement, or resort, and other places to which the general public is invited.

We reject Shumate's argument that the misdemeanor punishment in section 216C.11(3) automatically gives rise to a right to sue. The court of appeals noted Iowa Code section 611.21 allows a civil cause of action when there is also a violation of a criminal statute. *See Heick v. Bacon*, 561 N.W.2d 45, 54 (Iowa 1997) (stating section 611.21 "allows a cause of action for violation of a criminal statute"). Section 611.21 states: "The right of civil remedy is not merged in a public offense and is not restricted for other violation of law, but may in all cases be enforced independently of and in addition to the punishment of the former." Iowa Code § 611.21. In *Hall v. Montgomery Ward & Co.*, we interpreted section 611.21 "as itself providing a civil right for violation of a criminal statute." 252 N.W.2d 421, 423 (Iowa 1977); *accord Davis v. Crook,* 261 N.W.2d 500, 505 (Iowa 1978) (noting *Hall* "reaffirmed an early interpretation holding civil remedies may in all cases be enforced for injuries sustained by reason of public offenses"). But, we limited the situations in which a private cause of action arises out of a criminal violation to those in which the plaintiff was "within the protection of the statute" and the plaintiff's harm "flow[ed] from the statutorily proscribed conduct." *Hall,* 252 N.W.2d at 424. As we later explained in *Seeman,*

> the *Hall* holding was based upon legislative intent to create a civil tort action, and is therefore in accord with the general rule that violation of a criminal statute gives rise to a civil cause of action only if such an action appears, by express terms or clear implication, to have been intended by the legislature.

322 N.W.2d at 38. In sum, while section 611.21 prevents merger of a civil remedy in a criminal offense, it does not *create* a civil cause of action for the violation of a criminal statute absent legislative intent to do so. The two factors articulated in *Hall*—whether the plaintiff was within the protection of the statute and whether the plaintiff's harm flowed from the

statutory violation—help determine legislative intent. The court still must determine that a statute other than section 611.21 provides an implied private right of action.

Here, we conclude the legislature did not intend the misdemeanor provisions in chapter 216C to create a civil cause of action for service dog trainers. Quite the opposite, we have concluded the express inclusion of private causes of action in chapters 216E and 216 and the procedural framework of chapter 216 demonstrate the legislature did *not* intend to create a right to sue under chapter 216C. *Cf. Ackelson,* 832 N.W.2d at 688 (noting that punitive damages are expressly allowed for housing discrimination in section 216.17A(6)(*a*) and holding that punitive damages are not allowed for employment discrimination in section 216.15(9)(*a*)(8), which provides that "damages shall include but are not limited to actual damages"). Although Shumate was within the protection of section 216C.11(2) and alleges her harm flowed from Drake's violation of that statute, those factors are insufficient to overcome the other indications that the legislature deliberately stopped short of creating a private right of action for service dog trainers. *See City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 122, 125 S. Ct. 1453, 1459, 161 L. Ed. 2d 316, 327 (2005) (noting an "ordinary inference . . . can surely be overcome by textual indication, express or implicit").

The misdemeanor provisions in Iowa Code sections 216C.7 and 216C.11(3) allow for up to thirty days of incarceration, a fine of $625, and a criminal record. *See* Iowa Code § 903.1(1)(*a*). The legislature could reasonably believe such potential punishments would deter violations of section 216C.11(2). Policy arguments that a misdemeanor prosecution is an ineffective enforcement mechanism are properly directed to the legislature. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 177, 114 S. Ct. 1439,

1448, 128 L. Ed. 2d 119, 132 (1994) ("The issue, however, is not whether imposing private civil liability . . . is good policy but whether [it] is covered by the statute."); *In re Estate of Whalen*, 827 N.W.2d 184, 194 (Iowa 2013) ("Policy arguments to amend the statute should be directed to the legislature.").

We hold there is no implied private right of action under Iowa Code chapter 216C. Accordingly, the district court correctly granted Drake's motion to dismiss Shumate's petition.

## IV. Disposition.

For the foregoing reasons, we vacate the decision of the court of appeals and affirm the district court's judgment dismissing Shumate's petition with prejudice.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Appel, J., who concurs specially, and Mansfield, J., who takes no part.

**APPEL, Justice (concurring specially).**

I concur in the result in this case as I do not believe the legislature intended to allow trainers of dogs to vindicate the rights of trainers through a private right of action. The statute is designed to encourage the training of dogs, not provide civil remedies for dog trainers.

I do not believe, however, that finding a private right of action in this case would offend Iowa Code chapter 216. Dog trainers, of course, are not covered by chapter 216. As a result, a private cause of action would not intrude on the jurisdiction of the Iowa Civil Rights Commission. Further, if the legislature sought to provide a private right of action for dog trainers, allowing such an action to proceed without going through chapter 216 strikes me as a plausible and even sensible choice. Even though I do not see a conflict between a private right of action and chapter 216, however, I agree the legislature did not intend to imply a private right of action for damages by dog trainers. I therefore concur in the result in this case.