# IN THE COURT OF APPEALS OF IOWA

No. 23-1101
Filed December 18, 2024


DANNY JENNINGS, SHELLEY JENNINGS, KRISTEN THATCHER, STEPHEN THATCHER, IDA VAN SCYOC and TANDON VAN SCYOC,
    Petitioners-Appellants,

vs.

FREMONT COUNTY, IOWA, BOARD OF SUPERVISORS OF FREMONT COUNTY, IOWA, CLINT BLACKBURN, CHRIS CLARK, RANDY HICKEY and DUSTIN SHELDON,
    Respondents-Appellees,

and

SHENANDOAH HILLS WIND PROJECT, LLC,
    Intervenor-Appellee.
_____

Appeal from the Iowa District Court for Fremont County, Greg W. Steensland, Judge.


Residents appeal from dismissal of a petition challenging action by the county board of supervisors and elected officials. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**


Shawn Shearer of The Shearer Law Office, P.C., Des Moines, for appellants.

Robert M. Livingston and Kristopher K. Madsen of Stuart Tinley Law Firm, LLP, Council Bluffs, for appellees.

Kristy Dahl Rogers, Bret A. Dublinske, and Brant M. Leonard of Fredrikson & Byron, P.A., Des Moines, for intervenor.

Heard by Buller, P.J., Langholz, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BULLER, Presiding Judge.**

Six Fremont County residents (Residents) appeal the district court's ruling dismissing their claims concerning a wind turbine construction project, including alleged violations of local ordinances and state statutes by members of the Fremont County Board of Supervisors (Board), Fremont County (County), and other County officials. On our review, we conclude all the claims other than alleged public-meetings violations had to be brought in a certiorari action. And we find the alleged public-meetings violations, although thinly pled, should have survived a motion to dismiss. We affirm dismissal of all claims but those relating to public meetings and reverse and remand for further proceedings.

I.       **Background Facts and Proceedings**

We draw the following facts from the petition's well-pleaded factual allegations, which we accept as true for purposes of this appeal. *See Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014); *Roush v. Mahaska State Bank*, 605 N.W.2d 6, 9–10 (Iowa 2000).

Shenandoah Hills Wind Project, LLC (SHW) is an affiliate of a renewable energy developer and an intervenor in this action. SHW's proposed commercial wind turbine project at issue in this appeal is a wind energy conversion system (WECS). It involves up to sixty-one turbines total—twenty-eight sites in Page County and thirty-three sites in Fremont County.

In 2020—before issuing a permit for the project—the Board passed a Wind Ordinance establishing regulations for any future WECS to be installed and operated in the County. Operation of WECS before this was not permitted under the 1968 Zoning Ordinance, which split the county into districts—industrial,

commercial, agricultural, and residential—with varying regulations for each. The Zoning Ordinance is distinct from a comprehensive plan. *See* Iowa Code § 335.5(4)(a) (2023) ("A comprehensive plan recommended for adoption or amendment by the zoning commission established under section 335.8 may be adopted by the board of supervisors."). Under the Zoning Ordinance, non-agricultural structures more than thirty-five feet tall are prohibited in agricultural districts and there were no exceptions for wind turbines or commercial electricity generation facilities. Even so, the Board had previously amended the Zoning Ordinance to allow otherwise impermissible uses of the land: for example, a 2001 Cell Tower Ordinance allowed construction of structures taller than thirty-five feet. To obtain a special use permit to construct a non-conforming structure outside the ordinance process, Board of Adjustment approval was needed.

Following the Board's unanimous approval of the Wind Ordinance, SHW prepared an application for a permit to build and operate the project at issue under the Wind Ordinance. This application, among other things, included approximate coordinate locations of each turbine and five possible models of turbines to be constructed. The county engineer reviewed the application, "deemed it compliant," and presented it to the Board. County residents had approximately four months to express concerns about the project at the Board's weekly open meetings. The Board ultimately voted 3–0 to approve SHW's application for a permit to begin construction of the Fremont County portion of the project. Subsequent approval was given for road-use and decommissioning agreements between SHW and the County outlining how SHW would repair any damaged roadways and remove the

turbines at the end of the project. The Wind Ordinance also required applicants to obtain building permits for each wind turbine.

The Residents challenged the validity of the Wind Ordinance permitting operational WECS, as the language did not explicitly specify it was amending the Zoning Ordinance—despite a repealer and severability provision in the Wind Ordinance. That provision reads: "All ordinances or parts of ordinances in conflict herewith are hereby repealed." The Residents argue this repealer violates Iowa Code section 331.302(4), which provides: "An amendment to an ordinance or to a code of ordinances shall specifically repeal the ordinance or code, or the section, subsection, paragraph, or subpart to be amended, and shall set forth the ordinance, code, section, subsection, paragraph, or subpart as amended." And the Residents alleged the Wind Ordinance did not "specifically" amend or repeal any part of the Zoning Ordinance. *See* Iowa Code § 331.302(4).

The Residents also urged: (1) the procedures employed while the SHW project application was pending did not comply with the Open Meetings Act codified at Iowa Code Chapter 21; (2) the permit was wrongfully issued; and (3) the execution of the road-use and decommissioning agreements was improper. In a sixty-four-page petition with more than 300 paragraphs and subparagraphs, the Residents sought "relief at law and at equity for the Declaratory Judgments, Temporary and Permanent Injunctions, Writs of Certiorari, Orders of Mandamus, Remedies for Violations of the Iowa Open Meetings Act, and such other legal and equitable relief." SHW was not a named defendant but intervened.

The amended petition levies twenty-one claims, including that:

- Board members engaged in illegal "self-dealing" constituting "illegal collusion and an illegal intra- [and] interstate enterprise."
- The County "failed to publish and make public all of the provisions of the document purporting to be the Wind Ordinance."
- "The Wind Ordinance did not follow the requirements of Iowa Code [section] 331.302(4)" or prior Board amendment procedures and did not change the special uses or height restrictions of the Zoning Ordinance.
- The Wind Ordinance was not a proper amendment to the Zoning Ordinance, so Iowa Code section 335.24 dictates the more restrictive terms in the Zoning Ordinance apply.
- SHW's parent organization "drafted all, or portions material to the regulations" of the Wind Ordinance.
- There was not substantial compliance with Iowa Code section 331.302(6)(a), which requires "a proposed ordinance or amendment shall be *considered and voted on* for passage at two meetings of the board prior to the meeting at which it is to be finally passed, unless this requirement is suspended by a recorded vote of not less than a majority of the supervisors" (emphasis added).
- The terms and conditions of the Wind Ordinance read at three separate Board meetings were all different and no preliminary votes were cast.
- The Board failed to properly acknowledge the concerns of County residents regarding SHW's application because they "could benefit from the plan."
- Quasi-judicial policy-making decisions were made by the Board concerning the road-use and decommissioning agreements that were inconsistent with the Wind Ordinance and Iowa law.
- A number of other enumerated claims, each with multiple paragraphs, grouped into five buckets with the above claims.

Before the petition was filed in this action, the Residents' counsel filed a similar action in Page County with substantially similar claims and attorneys involved. That case was removed to federal court and dismissed shortly thereafter. *See Hunter v. Page County*, 653 F. Supp. 3d 600, 620–21 (S.D. Iowa 2023), *aff'd in part, vacated in part as moot*, 102 F.4th 853, 875 (8th Cir. 2024). The Residents amended their petition in this action eight days after the district court's dismissal of the federal case.

While SHW's anticipated construction start date was delayed by the litigation, SHW took developmental steps to continue the viability of the project, including intervening here. On March 30, 2023, SHW filed a motion to dismiss pursuant to Iowa Rule of Civil Procedure 1.402(2); the County moved for judgment on the pleadings five days later, in effect joining SHW's motion to dismiss. A week later, the Residents moved for partial judgment on the pleadings. The Residents filed a fifty-eight-page resistance to SHW and the County's motions, SHW filed a resistance to the Residents' motion for partial judgment on the pleadings, and the County joined SHW's filing.

The district court heard oral arguments on all the pending motions and dismissed the complaint nearly a month later. Ultimately, SHW's motion to dismiss and the County's motion for judgment on the pleadings were granted; the Residents' motions for partial judgment on the pleadings and for temporary injunction were denied. The Residents appeal.

## II. The Record on Appeal

Before the legal analysis, on our own motion we address a procedural issue concerning the scope of the record. In its brief (joined by the County as appellee), SHW repeatedly references a sanctions ruling entered four months after the notice of appeal was filed. "Ordinarily, we do not consider matters that are not part of the record, which includes those items filed after notice of appeal." *State v. Kucharo*, No. 22-1881, 2024 WL 2842307, at *3 (Iowa Ct. App. June 5, 2024); *see also* Iowa R. App. P. 6.801 (defining the record on appeal). This is "because the appellate courts cannot consider materials that were not before the district court when that court entered its judgment." *Alvarez v. IBP, Inc.*, 696 N.W.2d 1, 3 (Iowa 2005).

The judgment at issue was entered on June 13, 2023, and the notice of appeal was filed on July 7. Case filings after those dates—such as SHW's July 13 motion for sanctions—are not part of the record on appeal, and we do not consider them. We strike all portions of the briefs referencing these materials, and we strike the materials from the joint appendix.

### III. Standard of Review

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 538 (Iowa 2022) (citation omitted). We accept the petition's well-pleaded factual allegations as true—but not its legal conclusions. *Shumate*, 846 N.W.2d at 507. "We construe the petition in its most favorable light, resolving all doubts and ambiguities in the plaintiff's favor." *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 298 (Iowa 2020) (cleaned up). We affirm when the allegations, taken as true, fail to state a claim upon which relief may be granted. *Thongvanh v. State*, 938 N.W.2d 2, 8 (Iowa 2020).

Similarly, "[w]e review a grant of judgment on the pleadings for corrections of errors at law." *Roush*, 605 N.W.2d at 8. As in a motion to dismiss, "[t]he facts set forth in a petition are accepted as true in deciding a case on the pleadings." *Id.* at 9.

### IV. Mechanism of Review

Before our discussion of the merits, we also must address whether this matter was brought by the correct legal mechanism. In the district court, SHW and the county urged that the Residents' petition should be dismissed because the claims sounded in certiorari, which is an exclusive remedy. In oral argument

before our court, counsel for SHW candidly admitted that certiorari probably was not the right remedy for the public-meetings claim. The Residents' counsel argued that certiorari was not the exclusive remedy because the Board's acts were illegal "from the beginning." On our review, we agree with SHW that certiorari was the proper and exclusive means by which the Residents could make all their challenges, except for the Chapter 21 statutory public-meetings claims.

Controlling precedent holds certiorari is the exclusive remedy to review the "decisions of city councils or county boards of supervisors acting in a quasi-judicial capacity when the claimant alleges illegality of the action taken." *Sutton v. Dubuque City Council*, 729 N.W.2d 796, 800 (Iowa 2006). Quasi-judicial decisions include zoning decisions challenged for lack of compliance with ordinances and challenges that concern a comprehensive plan. *See id.* at 800–01. Other case law reflects that certiorari includes challenges to alleged procedural irregularities and whether county or municipal action complied with a state statute. *See Smith v. City of Fort Dodge*, 160 N.W.2d 492, 495–98 (Iowa 1968). And, contrary to arguments made by the Residents, there is no exception to the exclusivity requirement for certiorari for acts that were illegal "from the beginning"—and we note such an exception would swallow the rule, as certiorari claims allege an illegal act by their very nature. *See* Iowa R. Civ. P. 1.1401 ("A party may commence a certiorari action when authorized by statute or when the party claims an inferior tribunal, board, or officer, exercising judicial functions, or a judicial magistrate exceeded proper jurisdiction or otherwise acted illegally.").

We conclude nearly all of the Board's actions at issue in this appeal were quasi-judicial, as they involved notice, hearing, and other hallmarks of the quasi-

judicial process. *See Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 41–42 (Iowa 2016). For many of these claims, the Residents seemingly concede as much—their petition below sought relief "by" certiorari for at least half of their claims, and the declaratory-relief claims were largely the same allegations with a reference to declaratory action tacked on at the end. We have evaluated all of the Residents' claims, both in isolation and in context of the petition as a whole, and find all but three concern quasi-judicial acts reviewable only by certiorari. The only claims we find do not concern quasi-judicial acts are the statutory public-meetings claims that appear in counts 16, 17, and 18 of the amended petition. Because those claims sound in Iowa Code Chapter 21, and that statute affords an independent remedy or remedies, certiorari is not the exclusive means of resolving those claims. In short, our certiorari analysis does not apply to the three public-meeting claims.

Having determined all but the public-meetings claims should have been brought by certiorari, we now face a question of timeliness. A certiorari action "must be filed within 30 days from the time the tribunal, board or officer exceeded its jurisdiction or otherwise acted illegally." Iowa R. Civ. P. 1.1402(3). There is a process to seek extensions, but the extension in any event cannot exceed ninety days of the challenged decision. *Id.* This deadline is jurisdictional, and failure to meet it requires dismissal. *O'Malley v. Gundermann*, 618 N.W.2d 286, 291 (Iowa 2000). Here, the Residents did not commence this action until 197 days after the Board approved the application at issue and 946 days after the Board passed the Wind Ordinance. Even taking the date most generous to the Residents, the action is more than 100 days untimely. We affirm dismissal of all claims that should have

been brought by certiorari—that is, all claims other than alleged public-meetings violations—on this jurisdictional basis. *See id.*; *Johnston Equip. Corp. of Iowa v. Indus. Indem.*, 489 N.W.2d 13, 17 (Iowa 1992) (recognizing we can affirm on any basis raised in the district court).

### V.      Discussion

In counts 16, 17, and 18, the Residents allege violations of the Open Meetings Act, asserting that county supervisors held unidentified secret meetings about the Wind Ordinance, SHW's application, and the subsequent road-use and decommissioning agreements. The petition refers to various "indicia" the Residents claim lead to the inference or implication that a secret meeting must have been held.

In reviewing these factual allegations, we are mindful that the term "meeting" has a special meaning within the statute:

> *"Meeting"* means a gathering in person or by electronic means, formal or informal, of a majority of the members of a governmental body where there is deliberation or action upon any matter within the scope of the governmental body's policy-making duties. Meetings shall not include a gathering of members of a governmental body for purely ministerial or social purposes when there is no discussion of policy or no intent to avoid the purposes of this chapter.

Iowa Code § 21.2(2). A meeting thus requires deliberation, discussion, and evaluative actions when arriving at a decision; a gathering does not become a meeting when the gathering is limited to receipt of information or individual members securing information to be acted upon at a meeting. *See Hutchison v. Shull*, 878 N.W.2d 221, 237 (Iowa 2016); *Tel. Herald, Inc. v. City of Dubuque*, 297 N.W.2d 529, 534 (Iowa 1980). The standard for procedures imposed by the Open

Meetings Act, "is substantial rather than absolute compliance." *KCOB/KLVN, Inc. v. Jasper Cnty. Bd. of Supervisors*, 473 N.W.2d 171, 176 (Iowa 1991).

"Historically, Iowa is a notice pleading state." *Nahas v. Polk Cnty.*, 991 N.W.2d 770, 776 (Iowa 2023). "Under our notice-pleading standards, nearly every case will survive a motion to dismiss for failure to state a claim upon which any relief may be granted." *Young v. HealthPort Techs., Inc.*, 877 N.W.2d 124, 127 (Iowa 2016). In applying this standard, our supreme court has held:

> The petition need not allege ultimate facts that support each element of the cause of action. The petition, however, must contain factual allegations that give the defendant "fair notice" of the claim asserted so the defendant can adequately respond to the petition. A petition complies with the "fair notice" requirement if it informs the defendant of the incident giving rise to the claim and of the claim's general nature. We view the plaintiff's allegation "in the light most favorable to the plaintiff with doubts resolved in that party's favor."

*Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004) (citations omitted).

Given our state's approach to notice pleading, we conclude the petition crossed the low threshold necessary to survive a motion to dismiss. In making this determination, we do not rely on what the Residents call "indicia" of closed meetings. We offer no opinion on whether such indicia standing alone would be sufficient to plead a claim. But here the Residents also made the factual allegation that a majority of the Board actually engaged in secret "meetings" that included deliberation, which could potentially amount to a statutory violation if proven. While somewhat barebones, that is enough to go forward at this stage of litigation and give the defendants notice of the claim asserted. We therefore reverse dismissal of counts 16, 17, and 18, and remand for further proceedings in the district court. We express no opinion on the merits of the underlying claims or whether other

dispositive motions may be appropriate; our holding is limited to the conclusion there was enough pled to survive a motion to dismiss.

## VI.     Disposition

Because we find certiorari was the appropriate and exclusive mechanism by which nearly all of the Residents claims should have been brought and the petition was therefore untimely, we affirm dismissal of all claims other than those alleging public-meetings violations.   We reverse and remand for further proceedings on the public-meetings claims.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

Gamble, S.J., concurs; Langholz, J concurs specially.

**LANGHOLZ, Judge** (concurring specially).

I join in all the court's well-reasoned opinion, including our decision not to reach the merits of the plaintiffs' claim that the general repealer clause of the wind ordinance violates Iowa Code section 331.302(4). Given our holding that the claim should have been brought as a certiorari proceeding, the court appropriately declines to give an advisory opinion on the merits of that claim. But in my view—in line with a long judicial tradition—an appellate judge writing separately has greater liberty to discuss matters that may aid the parties', the public's, or the judiciary's understanding of the law or its development. And I do so here to emphasize that no one should read the court's opinion as blessing the ordinance's general repealer clause. In a case where it were necessary to do so, I would not hesitate to hold the clause violates section 331.302(4) because it fails to specify *any* particular provision that is repealed. Such a violation is not a mere technicality—it cuts to the core of the rule of law and should not be repeated.

Section 331.302(4)—one of several statutory requirements for the enactment of legislation by county boards of supervisors—provides: "An amendment to an ordinance or to a code of ordinances shall specifically repeal the ordinance or code, or the section, subsection, paragraph, or subpart to be amended, and shall set forth the ordinance, code, section, subsection, paragraph, or subpart as amended." Iowa Code § 331.302(4). Despite this clear and simple directive that an ordinance must specify exactly which part of an existing ordinance or code is being amended, the wind ordinance contains a one-line repealer clause: "All ordinances or parts of ordinances in conflict herewith are hereby repealed." That clause does not comply with the statute. Not even close.

The County and Shenandoah Hills defend the general repealer clause by arguing that section 331.302(4) does not apply because the wind ordinance is a "standalone" one, amending no other ordinance. But the text of the clause defeats this argument. The clause repeals "all" conflicting "ordinances or parts of ordinances." And such a repeal of "ordinances" and "parts of ordinances" is an amendment to those ordinances or the code to which they belong. So the clause *amends* those ordinances or parts of ordinances that conflict with the wind ordinance. It just doesn't say specifically which ordinances or parts are amended by repeal. That failure flouts the statute, which applies to the clause.

The County and Shenandoah Hills also contend that the clause complies with section 331.302(4) because the statute "requires only that an enactment express its intention to repeal conflicting ordinance provisions; it does not require fully setting forth every impacted ordinance in an 'as amended' state." But this argument conflates two distinct requirements of the statute to avoid complying with the one at issue here. Section 331.302(4) requires both that an ordinance "specifically repeal the ordinance or code, or the section, subsection, paragraph, or subpart to be amended" and that it "set forth the ordinance, code, section, subsection, paragraph, or subpart as amended." *Id.*; *see also Brackett v. City of Des Moines*, 67 N.W.2d 542, 545 (Iowa 1954) (interpreting only the specificity requirement in the similar statute applying to city ordinances); *Rocho v. Boone Elec. Co.,* 140 N.W. 193, 193 (Iowa 1913) (interpreting only the setting-forth requirement in the similar statute applying to cities).

True, the statute may not require a full restatement of any amended ordinance—particularly where, as here, the ordinance only repeals prior

ordinances and parts without adding new text to them.[1]  But that does not mean the wind ordinance need not satisfy the statute's other requirement to "specifically repeal the ordinance or code, or the section, subsection, paragraph, or subpart to be amended."  *Id.*; *see also Brackett*, 67 N.W.2d at 545 (explaining the new ordinance must sufficiently identify "an ordinance to be repealed . . . such that the lawmakers and the people be not left in doubt as to what ordinance is repealed").  And if there were any question about the specificity required, the statute's inclusion of legislative parts down to the "subpart" makes clear that the legislature demands particularity.[2]  A general expression of "intention to repeal conflicting ordinance provisions" doesn't cut it.

And properly so.  Through its ordinances, a board of supervisors enacts *law* for its county—enforceable much the same as statutory enactments of our legislature.  *See* Iowa Const. art. III, § 39A ("Counties . . . are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly.").  Enforcing

---

[1] In support of their interpretation of this second statutory requirement, the County and Shenandoah Hills persuasively point to the statutory history of the provision. The provision used to require the new ordinance "set forth *in full* the ordinance, code, section, or subsection as amended."  Iowa Code § 331.302(4) (1989) (emphasis added).  But in 1991, the legislature amended to the statute to strike "in full."  *See* 1991 Iowa Acts ch. 145, § 1.  "[W]hen the legislature amends a statute, a presumption exists that the legislature intended to change the law."  *Chavez v. MS Tech., LLC*, 972 N.W.2d 662, 670 (Iowa 2022) (cleaned up).  So this amendment suggests that whatever must be set forth in the new ordinance is something less than the "full" code or ordinance amended.

[2] Indeed, the same enactment that removed "in full" from section 331.302(4) boosted the specificity requirement by requiring the specific repeal of not just the "ordinance or code, or the section or subsection," but also even the "paragraph, or subpart."  1991 Iowa Acts ch. 145, § 1.

a law only after fair notice is a foundational pillar of the rule of law. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265–66 (1994) (explaining that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly" and that "a rule of law that gives people confidence about the legal consequences of their actions" fosters "creativity in both commercial and artistic endeavors" in "a free, dynamic society"). Section 331.302(4) buttresses this principle for local laws to ensure that there is no doubt about what the law is. Because the general repealer clause leaves much doubt—requiring a search through all the county ordinances for any that may contain a provision in conflict with the wind ordinance—that clause violates section 331.302(4). It is void. *See Rocho*, 140 N.W. at 193 (holding city ordinance invalid for violating the earlier version of the setting-forth requirement of the statute applying to cities).

What's more, I suspect that Fremont County would not *want* the general repealer clause to be effective as written. The County and Shenandoah Hills suggest that the clause's effect would be to leave other ordinances "unchanged as to other uses" and to "supersede" them only for wind projects. But that's not what the clause says. By its terms, it *repeals* "[a]ll ordinances or parts of ordinances in conflict herewith." It does not say that the new ordinance applies, "notwithstanding conflicting ordinances," which would leave those ordinances in effect for other uses. So if effective, the clause would seem to repeal any conflicting ordinance—meaning such ordinances would be wiped off the books. Yet section 331.302(4) protects against such missteps by requiring any change in effect on a prior ordinance to be "specifically" stated.

For all these reasons, in a proper case, I would hold that the general repealer clause of the wind ordinance violates section 331.302(4). Counties would be wise not to use such a clause in their ordinances.